ORIGINAL

FILED IN OPEN COURT
U.S.D.C. - Atlanta

DEC - 9 2025

KEVIN P. WEIMER, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

KIMANI BRACEY

Criminal Indictment

No.

## 1:25-CR-533

THE GRAND JURY CHARGES THAT:

### COUNTS 1-4
*(Wire Fraud – 18 U.S.C. § 1343)*

1. From at least on or about March 1, 2019, through at least on or about February 21, 2024, in the Northern District of Georgia and elsewhere, the defendant, KIMANI BRACEY, aided and abetted by others known and unknown to the Grand Jury, did knowingly devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and by omission of material facts, and for the purpose of executing the scheme and artifice to defraud, with the intent to defraud, caused to be transmitted by means of wire communications in interstate commerce certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Sections 1343 and 2.

### Background

At all times relevant to this Indictment:

2. Defendant BRACEY, a resident of Gwinnett County, Georgia, owned and controlled Blast Vision, LLC ("Blast Vision"), a company organized under the laws of the State of Georgia. The address associated with Blast Vision was located in Atlanta, Georgia 30313.

3. Between at least 2019 and in or about August 2025, Defendant BRACEY operated the "the Doc Market" through a publicly available website, www.thedocmarket.com.

4. From at least 2019 until 2023, Defendant BRACEY operated "Doc Central Station" through a publicly available website, www.doccentralstation.com.

### The Paycheck Protection Program ("PPP")

5. The PPP was a COVID-19 pandemic relief program administered by the Small Business Administration ("SBA") that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable, and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

6. To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business

2

was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents. The PPP loan application would be submitted to a third-party lender.

7. During the PPP loan application process, PPP loan applications were electronically submitted or caused to be submitted by the borrower and were ultimately received through SBA servers located in Virginia or Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business. The proceeds of a PPP loan could be used for certain specified items, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by the borrowers to purchase consumer goods, personal automobiles, personal residences, clothing, or jewelry; to pay the borrower's personal federal income taxes; or to fund the borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

*Relevant Financial Institutions*

8. "Bank A" was a financial institution based in Laguna Hills, California. Bank A was an SBA-approved PPP lender.

9. "Bank B" was a financial institution based in Lake Success, New York. Bank B was an SBA-approved PPP lender.

10. "Bank C" was a financial institution based in Bedford, Texas. Bank C was an SBA-approved PPP lender.

### Scheme to Defraud

11. Defendant BRACEY owned and operated at least two online businesses, The Doc Market (www.thedocmarket.com) and The Doc Central Station (www.doccentralstation.com). Defendant BRACEY advertised both websites as places where individuals could obtain fake and fraudulent documents.

12. For example, on The Doc Market website, Defendant BRACEY advertised for purchase fake or "novelty" documents such as paystubs, employment verification forms, bank statements, profit and loss statements, paycheck stubs, utility bills, Form W-2s, Form 1099s, Form 1040 tax returns, high school diplomas, and GEDs, among other documents. The Doc Market website specifically stated, "The Doc Market will assist you with documenting your income." It also stated, "our professional team is comprised of skilled and experienced individuals who use the latest technology to ensure you experience a top notch service and receive an authentic looking document you can count on!"

13. Defendant BRACEY's customers could order the fraudulent documents directly through the websites. To do so, customers were instructed to input their contact information, specifics about the documents requested, and payment information.

4

14. Customers paid Defendant BRACEY for the fake and fraudulent documents via CashApp and other means.

15. Defendant BRACEY knew when creating the fake and fraudulent documents for customers that the documents would be used as supporting documentation for various fraudulent activities, such as fraudulently obtaining automobile and mortgage loans. For example:

    a. Between in or about June 2021 and in or about July 2021, Defendant BRACEY created fake paystubs and a fake employment verification letter for a customer seeking a mortgage loan. The fake employment verification letter misrepresented that an individual was an employee of Defendant BRACEY's company, Blast Vision. Defendant BRACY knew the customer would use the fraudulent documentation as part of applying for a mortgage loan, and that the individual did not work for his company, Blast Vision.

    b. Between in or about July 2021 and in or about August 2021, Defendant BRACEY created a fake paystub for a customer seeking a car loan. The fake paystubs misrepresented that the individual was an employee of Defendant BRACEY's company, Blast Vision. Defendant BRACEY knew that the customer would use the fraudulent documentation to secure a car loan, and that the individual did not work for his company, Blast Vision.

16. Defendant BRACEY also exploited the COVID-19 pandemic by creating fake and fraudulent documents for his customers, including fake and fraudulent

5

tax documents, bank statements, and COVID-19 tests, knowing that his customers were using the fake and fraudulent documents for, among other things, to obtain fraudulent PPP loans. For example:

a. On or about January 12, 2021, F.K. submitted an order for paystubs on the Doc Market website. On the same day, F.K. sent an email to orders@thedocmarket.com with the title "940 PPP." On or about January 14, 2021, Defendant BRACEY sent F.K. a fake Form 1040 Schedule C tax return. The fake tax return was submitted in support of F.K.'s PPP loan application that was funded in the amount of $44,512 by Bank A.

b. On or about January 13, 2021, K.K. submitted an order to the Doc Market website requesting documents for a PPP loan. On or about February 4, 2021, Defendant BRACEY sent K.K a fake Form 1040 Schedule C tax return and false bank statements. The fake tax return and false bank statements were submitted in support of K.K.'s PPP loan application that was funded in the amount of $30,600 by Bank B.

c. On or about March 17, 2021, R.R. sent emails to orders@thedocmarket.com. In the emails, R.R. stated that she needed a Schedule C with figures to qualify for a $20,000 PPP loan. On or about March 19, 2021, Defendant BRACEY sent R.R. a fake Form 1040 Schedule C. The fake Form 1040 Schedule C was

6

submitted in support of R.R.'s PPP loan application that was funded in the amount of $20,287 by Bank C.

d.  On or about January 27, 2022, J.B. sent an email to Defendant BRACEY explaining that her employer wanted proof of a positive COVID test dated for the time she took off. J.B. asked Defendant BRACEY if he could alter a COVID test result, so J.B. could get approved for the time she took off. Defendant BRACEY responded by saying, "Hello. Send over to my email."

17. Bank A, Bank B, and Bank C collectively funded fraudulent PPP loan applications that included fake and fraudulent documents created by Defendant BRACEY in an amount of over $350,000.

18. Defendant BRACEY charged and received a fee in exchange for creating fake and fraudulent documents that he knew would be used to support fraudulent activity, including obtaining fraudulent PPP loans.

## Execution of the Scheme

19. On or about the dates set forth in the table below, in the Northern District of Georgia and elsewhere, the defendant, KIMANI BRACEY, aided and abetted by others known and unknown to the Grand Jury, for the purpose of executing and attempting to execute the scheme and artifice to defraud described above, such scheme and artifice having been devised and intended to be devised to defraud, and for the purpose of obtaining money and property from by means of materially false and fraudulent pretenses, representations, and promises, and by

7

omission of material facts, caused the following wire communications to be transmitted in interstate commerce:

| Count | Date | Description of Wire Communication |
|---|---|---|
| 1 | 1/12/2021 | A wire transfer of $208 via CashApp from F.K. to Defendant BRACEY for the creation of a false tax return. |
| 2 | 2/4/2021 | Email from Defendant BRACEY to K.K. with a false tax return and bank statements. |
| 3 | 6/15/2021 | Email from Defendant BRACEY to M.F. with fake paystubs and employment verification letter from Blast Vision LLC. |
| 4 | 8/1/2021 | Email from Defendant BRACEY to B.G. with fake paystubs from Blast Vision LLC. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## FORFEITURE PROVISION

20. Upon conviction of one or more offenses alleged in Counts One through Four of this Indictment, the defendant, KIMANI BRACEY, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2641(c), all property, real or personal, which constitutes or is derived from proceeds traceable to said violations, including, but not limited to, the following:

MONEY JUDGMENT: A sum of money in United States currency, representing the amount of proceeds obtained as a result of the offense(s) for which the defendant is convicted.

8

21. If, as a result of any act or omission of the defendant, any property subject to forfeiture:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty,

the United States intends, pursuant to Title 21, United States Code, Section 853(p), as incorporated by, Title 28, United States Code, Section 2461(c), to seek

forfeiture of any other property of said defendants up to the value of the

forfeitable property.

A _____ _____ BILL

_____

FOREPERSON

THEODORE S. HERTZBERG
  *United States Attorney*

ANGELA ADAMS
  *Assistant United States Attorney*
Georgia Bar No. 613114

CALVIN A. LEIPOLD, III
  *Assistant United States Attorney*
Georgia Bar No. 442379

600 U.S. Courthouse
75 Ted Turner Drive SW
Atlanta, GA 30303
404-581-6000; Fax: 404-581-6181